```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JONATHAN SOBEL,

                Plaintiff,

        v.                                  12 Civ. 2551 (DAB)
                                            MEMORANDUM AND ORDER
WILLIAM EGGLESTON, individually, and
WINSTON EGGLESTON and WILLIAM
EGGLESTON III as TRUSTEES of the
EGGLESTON ARTISTIC TRUST,

                Defendants.
------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

Plaintiff Jonathan Sobel ("Plaintiff") brings the above-captioned action against Defendants William Eggleston, individually ("Eggleston" or "Defendant"), and Winston Eggleston and William Eggleston III as Trustees of the Eggleston Artistic Trust ("Trustees" or "Defendants"), seeking damages and an injunction for violation of New York Arts and Cultural Affairs Law ("ACAL") § 11.01(10), fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and promissory estoppel.

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed June 1, 2012. For reasons detailed herein, Defendants'

**Motion to Dismiss is GRANTED in its entirety, and Plaintiff's claims are DISMISSED with prejudice.**

## I. FACTUAL BACKGROUND

**The following facts are drawn from Plaintiff's Complaint ("Compl.") filed April 3, 2012, and are assumed true for purposes of the Motion to Dismiss.**

**From 2008 to 2011, Plaintiff purchased eight of Eggleston's photographic works ("Limited Edition works" or "2008-2011 Limited Edition works"). (Compl. ¶ 15.) The size of the 2008-2011 Limited Edition works varies, but frequently approximates 16 x 20 inches. (Compl. ¶ 3 n.3.) The 2008-2011 Limited Edition works are believed to have been produced from photographic negatives or slides of Eggleston's original images via the "dye transfer process," some at or near the time that Eggleston created the images, and others much later. (Compl. ¶ 3 & n.1.)**

**When Plaintiff purchased the Limited Edition works, each of the works was individually numbered on the photograph itself, usually with a fraction. (Compl. ¶ 15.) Plaintiff contends that the fractions constituted Defendants' express and implied representation that the photographs were limited edition works, where the numerator indicated the specific image in the Limited Edition and the denominator indicated the maximum number of such**

2

images in the particular Limited Edition. (Compl. ¶ 15 & n.5.) Plaintiff's belief that the works were limited editions was a principal factor in his decision to purchase them. (Compl. ¶ 1.) Plaintiff alleges that designation as a limited edition has great financial significance. (Compl. ¶ 16.) "A collector pays a premium for a limited edition work, because that designation expressly and impliedly represents to the collector that the limited edition work will not be reproduced beyond the number set forth in the series of that particular limited edition." (Id.) Immediately before March 12, 2012, the aggregate fair market value of the eight Limited Edition works was approximately $850,000.00. (Compl. ¶ 17.)

At some point on or before March 12, 2012, Defendants entered a consignment agreement making Christie's, Inc. ("Christie's") their authorized agent for the sale of eight reprints ("Reprints") of images depicted in eight Limited Edition works. (Compl. ¶¶ 3-4.) Although the Reprints are identical in image to the Limited Edition works, they differ in size, medium, and production date. At 44 x 60 inches, they are larger than the Limited Edition works. (Compl. ¶ 3 n.3.) In addition, they were digitally manufactured from computer-generated files or scanned old prints and were physically printed on an inkjet printer at some point in or after April

2011. (Compl. ¶ 3.) The eight Reprints were sold, along with other Eggleston photographs, at a March 12, 2012 auction sponsored by Christie's. (Compl. ¶¶ 1, 4.) Plaintiff contends that the sale of the Reprints substantially diminished the monetary value and uniqueness of the Limited Edition works. (Compl. ¶ 5.) According to Plaintiff, Defendants intend to reproduce and sell images from other Limited Edition works purchased by Plaintiff. (Compl. ¶ 18.) The amount in controversy is at least $75,000. (Compl. ¶ 7.)[1]

---

[1] The Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff and Defendants are diverse parties, and Plaintiff has supported the jurisdictional amount of $75,000 with competent proof and by a preponderance of the evidence. See Agnesini v. Doctor's Associates, Inc., No. 10 Civ. 9190 (BSJ), 2012 WL 5873605, at *1 (S.D.N.Y. Nov. 13, 2012) ("'As with other general jurisdictional facts, the party claiming jurisdiction must support the jurisdictional amount with competent proof and justify its allegations by a preponderance of the evidence .' . . . 'This burden is hardly onerous, however, for courts recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.' . . . In order to overcome this presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable is below the jurisdictional threshold.") (quoting Graubart v. Jazz Images, Inc., 02 Civ. 4645 (KMK), 2006 WL 1140724, at *3 (S.D.N.Y. Apr. 27, 2006); Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003); and Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)) (internal citations and brackets omitted).

## II. DISCUSSION

A. Legal Standard for a Motion to Dismiss

For a complaint to survive a motion brought pursuant to Rule 12(b)(6), the Plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556–57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court stated,

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should

> assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.

In considering a motion under Rule 12(b)(6), the Court must accept as true all factual allegations set forth in the Complaint and draw all reasonable inferences in favor of the Plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U .S. at 678, which, like the Complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. at 555.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id.

(internal quotation marks omitted). However, though such evidence may be considered when attached to or incorporated into the Complaint, the Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Holloway v. King, 161 F. App'x 122, 124 (2d Cir. 2005) (internal quotation marks omitted).

B. New York Arts and Cultural Affairs Law § 11.01(10) Claim

Article 15 of the ACAL provides art purchasers with substantive rights and remedies against art merchants who sell artworks produced in multiples.[2] N.Y. Arts & Cult. Aff. Law art. 15 (West, Westlaw 2013). If the multiple being sold was produced after 1949 and "is offered as one of a limited edition, this shall be so stated, as well as the number of multiples in the edition, and whether and how the multiple is numbered." Id. § 15.03(6)(a); see id. § 15.05. "Unless otherwise disclosed," the number of multiples stated "shall constitute an express warranty . . . that no additional numbered multiples of the same image, exclusive of proofs, have been produced." Id. § 15.03(6)(b); see

---

[2] As relevant here, "multiples" means "prints, photographs, positive or negative, sculpture and similar art objects produced in more than one copy and sold, offered for sale or consigned in, into or from this state for an amount in excess of one hundred dollars exclusive of any frame . . . ." N.Y. Arts & Cult. Aff. Law § 11.01(21) (West, Westlaw 2013).

id. § 15.05. For multiples produced after January 1, 1982, the number of multiples stated "shall also constitute an express warranty . . . that no additional multiples of the same image, whether designated 'proofs' other than trial proofs, numbered or otherwise, have been produced in an amount which exceeds the number in the limited edition by twenty or twenty percent, whichever is greater." Id. § 15.03(6)(c). "If the number of multiples exceeds the number in the stated limited edition[,] . . . the number of proofs other than trial proofs, or other numbered or unnumbered multiples, in the same or other prior editions, produced from the same master . . . and whether and how they are signed and numbered" must be stated. Id. § 15.03(6)(d).

    Plaintiff, however, purports to bring this action not under Article 15 of the ACAL, but under Article 11, which merely defines terms used within the ACAL. Id. art. 11. In particular, Plaintiff charges Defendants with a "violation" of § 11.01(10), which defines "limited edition" in the context of the ACAL as "works of art produced from a master, all of which are the same image and bear numbers or other markings to denote the limited production thereof to a stated maximum number of multiples, or are otherwise held out as limited to a maximum number of multiples." Id. § 11.01(10). However, under the clear language

of the ACAL, no substantive rights or remedies arise from the definition of the term "limited edition," and Plaintiff's claim cannot rest solely on § 11.01(10). See generally id. tit. C.

Nor can Plaintiff make a viable claim under Article 15, which does provide substantive rights for purchasers of multiples. Plaintiff argues that Defendants violated the ACAL by holding out the Limited Edition works as restricted to a maximum number of multiples and subsequently creating and selling the Reprints. (Compl. ¶¶ 20-23.) However, nothing in the statute suggests that such behavior violates the ACAL, and indeed, the plain and unambiguous language of the statute shows that it is not a violation. The statute seems to contemplate and permit the very "violation" Plaintiff alleges, noting, "If the multiple was made from a master which produced a prior limited edition, or from a master which constitutes or was made from a reproduction of a prior multiple or of a master which produced prior multiples, this shall be stated." N.Y. Arts & Cult. Aff. Law § 15.01(4)(b). By requiring disclosure of the existence of the Limited Edition works to purchasers of the Reprints, the statute indicates that the sale of the Reprints was not itself a violation. In addition, the use of the present perfect tense in § 15.01(6) makes clear that the fraction on the Limited Edition works did not create a warranty barring future production of

9

multiples. Id. § 15.01(6)(b) ("[T]he number of multiples stated . . . shall constitute an express warranty . . . that no additional numbered multiples of the same image . . . have been produced.") (emphasis added); id. § 15.01(6)(c) (using the present perfect tense in a similar way). Instead, it constituted a warranty that the fraction's denominator represented the total number of multiples existing at the time of sale. See id. § 15.01(6)(b)-(c); Carr v. United States, 130 S. Ct. 2229, 2236 (2010) (noting that courts often look to a legislature's "choice of verb tense to ascertain a statute's temporal reach").

Plaintiff asks the Court to consider the legislative history of the ACAL. The Court will not do so. "[O]ur inquiry begins with the plain language of the statute and 'where the statutory language provides a clear answer, it ends there as well.'" Peralta-Taveras v. Gonzales, 488 F.3d 580, 584 (2d Cir. 2007) (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999)). "Legislative history is not to be used to 'beget' ambiguity in an otherwise unambiguous statute." Id. (quoting Callanan v. United States, 364 U.S. 587, 596 (1961)). Here, the statutory language is unambiguous, and makes clear that Defendants have not violated the ACAL. Accordingly, Defendants' Motion to Dismiss Plaintiff's ACAL claim is GRANTED.

C. Fraudulent Misrepresentation Claim

"Under New York law, 'to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (quoting Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (N.Y. App. Div. 2003)) (brackets omitted). Plaintiff's Complaint must also comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pro. 9(b). "[I]n order to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner, 459 F.3d at 291 (internal quotation marks omitted).

Here, the only "statements" the Complaint alleges were fraudulent are the fractions placed on the Limited Edition works.[3] (Compl. ¶ 15 & n.5.) Plaintiff alleges that the fractions

---

[3] Plaintiff, in his Opposition brief, also points to a statement made by Caldecot Chubb, who became Executive Director of the Eggleston Artistic Trust in 1999 and is Eggleston's friend; the

11

expressly and impliedly represented to him, and to other purchasers of photographs in the Limited Edition, that the photographs were limited edition works. (Id.) He further alleges that an art collector is willing to pay a premium for a limited edition work because the designation expressly and impliedly represents that the limited edition work "will not be reproduced beyond the number set forth in the series of that particular limited edition." (Compl. ¶ 16.)

Drawing all reasonable inferences in favor of Plaintiff, each fraction can plausibly be construed as a statement that the 2008-2011 Limited Edition contained only the number of multiples set forth in the denominator of the fraction, and that Eggleston would never increase the number of multiples in that particular Limited Edition. However, Plaintiff has failed to show that this representation was false. The Complaint suggests that rather than understating or increasing the number of multiples in the

---

statement appears in a 2007 article in the art magazine <u>Art on Paper</u>. (Pl. Opp. at 12-13; Lederman Decl. Ex. C.) "It is axiomatic, however, that a plaintiff cannot amend a complaint with new allegations contained in an opposition to a motion to dismiss." <u>CAC Group, Inc. v. Maxim Group, LLC</u>, No. 12 Civ. 5901 (KBF), 2012 WL 4857518, at *1 n.1 (S.D.N.Y. Oct. 10, 2012). Neither Mr. Chubb's statement nor the magazine article were alleged in the Complaint, attached to the Complaint as exhibits, incorporated by reference in the Complaint, or relied on heavily by the Complaint. <u>See</u> <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010). Therefore, the Court will not consider Plaintiff's new allegations regarding Mr. Chubb, except when discussing Plaintiff's request for leave to amend the Complaint.

2008-2011 Limited Edition, Eggleston subsequently produced a new edition of works ("Subsequent Edition works" or "Reprints"). (See Compl. ¶¶ 1, 3 & nn.1 & 3, 4-5, 15.)  Although both the Limited Edition works and the Subsequent Edition works were produced from the same images, they are markedly different. The Limited Edition works were produced from photographic negatives or slides via the "dye transfer process." (Compl. ¶ 3 & n.1.) In contrast, the Subsequent Edition works were digitally manufactured from computer-generated files or scanned old prints and were physically printed on an inkjet printer. (Compl. ¶ 3.) The size of the Limited Edition works frequently approximates 16 x 20 inches, while the Subsequent Edition works are 44 x 60 inches. (Compl. ¶ 3 n.3.) The difference in medium and size makes clear that the Reprints are part of a Subsequent Edition, rather than new multiples in the 2008-2011 Limited Edition. Eggleston's statement, therefore, was not false.

Plaintiff cannot allege plausibly that the fractions represented a promise not to produce any subsequent editions of Eggleston's original images.[4] For the Complaint to plead

---

[4] Even if Plaintiff could plausibly allege that Eggleston promised not to produce subsequent editions, his fraudulent misrepresentation claim would fail. Plaintiff's ACAL claim is essentially a breach of contract claim: namely, that Defendants promised not to produce additional multiples in consideration of Plaintiff's money, and then violated that promise. Under New York law, parallel fraud and contract claims may not be brought

adequately that the fractions represent such a promise, Plaintiff would have needed to make additional factual allegations. He has not done so here.

Because Plaintiff has failed to allege plausibly all elements of a fraudulent misrepresentation claim, Defendants' Motion to Dismiss Plaintiff's fraudulent misrepresentation claim is GRANTED.

D. Negligent Misrepresentation Claim

A claim for negligent representation "requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 944 N.E.2d 1104, 1109 (N.Y. 2011) (internal quotation marks omitted).

---

unless the plaintiff "(1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." <u>Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.</u>, 500 F.3d 171, 183 (2d Cir. 2007) (citing <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 20 (2d Cir. 1996)). A misrepresentation of present facts is collateral to a contract and involves a separate breach of duty, but a misrepresentation of future intent to perform (which Plaintiff alleges here) is not. <u>First Bank of Ams. v. Motor Car Funding</u>, 257 A.D.2d 287, 291-92 (N.Y. App. Div. 1999); see also <u>Merrill Lynch</u>, 500 F.3d at 184.

14

As discussed above, the Complaint alleges plausibly that Defendants represented that the 2008-2011 Limited Edition contained only the number of multiples listed in the denominator of the fraction on each work, and that they would not increase the number of multiples in the 2008-2011 Limited Edition. However, Plaintiff has not alleged that this information was incorrect. Instead, he has alleged that Defendants created the Subsequent Edition works. Because Plaintiff has not demonstrated that the alleged information was incorrect, his negligent misrepresentation claim is DISMISSED.

E. Unjust Enrichment Claim

In order to plead an unjust enrichment claim adequately, a plaintiff must allege that "'(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" <u>Georgia Malone & Co., Inc. v. Rieder</u>, 973 N.E.2d 743, 746 (N.Y. 2012) (quoting <u>Mandarin Trading Ltd.</u>, 944 N.E.2d at 1110). "'[A] claim for unjust enrichment will lie only where the defendant possesses money or received a benefit which in equity and good conscience the defendant should not retain because it <u>belongs to the plaintiff</u>.'" <u>Nat'l Westminster Bank PLC v. Grant Prideco, Inc.</u>, 261 F. Supp. 2d 265, 275

15

(S.D.N.Y. 2003) (quoting A.I.A. Holdings, S.A. v. Lehman Bros., Inc., No. 97 Civ. 4978 (LMM), 1999 WL 47223, at *4 (S.D.N.Y. Feb. 3, 1999)) (brackets omitted); see also Universal City Studios, Inc. v. Nintendo Co., Ltd., 797 F.2d 70, 79 (2d Cir. 1986) (affirming denial of relief on unjust enrichment counterclaim because Counterclaim-Defendant "did not obtain money that was owed to" Counterclaim-Plaintiff); Martes v. USLIFE Corp., 927 F. Supp. 146, 149 (S.D.N.Y. 1996) (denying unjust enrichment claim because Defendant did not "receive[] or possess[] anything that belongs to the plaintiff."); Reed Int'l Trading Corp. v. Donau Bank AG, 866 F. Supp. 750, 757 (S.D.N.Y. 1994) (Sotomayor, J.) ("[P]laintiffs cannot maintain an unjust enrichment claim for the return of funds in which they had no possessory interest . . . ."); M & T Bank Corp. v. Gemstone CDO VII, Ltd., 23 Misc. 3d 1105(A), 2009 WL 921381, at *18 (N.Y. Sup. Apr. 7, 2009) ("In the absence of any . . . 'possessory interest,' Plaintiff cannot maintain a cause of action for unjust enrichment.).

    Here, Plaintiff alleges that the proceeds from the March 12, 2012 Christie's auction unjustly enriched Defendants. (Compl. ¶ 40.) However, he does not allege that he has any possessory interest in the Reprints, the images from which the

Reprints were made,[5] or the money that purchasers paid for the Reprints. He thus fails to plead adequately that Defendants' enrichment via the March 2012 sale was at his own expense. Because Plaintiff cannot meet the second prong of the unjust enrichment test, his unjust enrichment claim is DISMISSED.

F. Promissory Estoppel Claim

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (Sotomayor, J.).

As discussed earlier, Plaintiff has failed to allege plausibly that Defendants made a clear and unambiguous promise not to make any subsequent editions of Eggleston's original images. Instead, Plaintiff has alleged plausibly Defendants' clear and unambiguous promise not to increase the number of multiples in the 2008-2011 Limited Edition. However, because

---

[5] Indeed, were Plaintiff to allege that by purchasing the Limited Edition works he somehow obtained the copyright to Eggleston's images and thereby has a possessory interest in the Reprints or images, his unjust enrichment claim would be preempted by the federal Copyright Act. See, e.g., Stewart v. World Wrestling Fed'n Entertainment, Inc., No. 03 Civ. 2468 (RLC), 2005 WL 66890, at *5 (S.D.N.Y. Jan. 11, 2005).

Defendants never broke this promise, Plaintiff has failed to show that he was injured by any reliance on the promise. Accordingly, Plaintiff's promissory estoppel claim is DISMISSED.

G. Leave to Amend

When a complaint has been dismissed, permission to amend it shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, a court may dismiss without leave to amend when amendment would be futile, or would not survive a motion to dismiss. Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005). "Where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." Beachum v. AWISCO New York Corp., 459 F. App'x 58, 59 (2d Cir. 2012) (quoting Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999)) (internal quotation marks omitted).

Although Plaintiff has requested leave to amend (Pl. Opp. at 24-25), he has failed to demonstrate that he would be able to amend his Complaint in a manner that would survive dismissal. His Opposition brief suggests that he seeks to add allegations regarding a 2007 article in an art magazine. (See Pl. Opp. at 12-13.) The article notes that Eggleston's work is similar to

18

that of the artist Helen Levitt but commands a much larger purchase price because Eggleston "limit[ed] editions and creat[ed] demand." (Id.) It also quotes the Executive Director of the Eggleston Artistic Trust, Caldecot Chubb: "Early on in his career, Eggleston, like Levitt, had 'open editions.' Now, 'we limit the editions,' Chubb said in a recent interview. 'You can't have pictures like Red Ceiling and Tricycle, that's the difference.'" (Lederman Decl. Ex. C at 2.) Red Ceiling (also known as Greenwood, Mississippi) and Tricycle (also known as Memphis) are images in both the 2008-2011 Limited Edition and the Subsequent Edition. (Pl. Opp. at 12-13; Lederman Decl. Ex. B at 1-4.) Plaintiff does not suggest that he was aware of Mr. Chubb's quote at the time he purchased the 2008-2011 Limited Edition works. (Pl. Opp. at 12-13.) Even if he did, the fractions and the Chubb quote cannot plausibly be construed as a promise not to create a subsequent edition containing works that are different in size and medium from the works in the 2008-2011 Limited Edition.

    Plaintiff has provided no other indication that an amended complaint would be able to survive dismissal. Accordingly, his request for leave to amend is DENIED.

III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED in its entirety. The Complaint is DISMISSED with prejudice as to all of Plaintiff's claims and without leave to amend. The Clerk is directed to CLOSE the docket in this case.

SO ORDERED.

DATED:    March 28, 2013
          New York, New York

_____
Deborah A. Batts
United States District Judge